IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-00989-LTB

JANICE K. STEPHAN,

    Plaintiff,

v.

BROOKDALE SENIOR LIVING COMMUNITIES, INC.,

    Defendant.
_____

ORDER
_____

This matter is before me on Defendant Brookdale Senior Living Communities, Inc.'s, Motion to Compel Arbitration **[Doc #8]**. After considering the parties' arguments, and for the reasons below, I GRANT the motion.

**I. Background**

In this action, Plaintiff Janice K. Stephan asserts employment discrimination claims against Defendant under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2612; the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623 *et seq*.; and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. 24-24-402 (collectively, the "Claims"). Only a portion of the facts are necessary to resolve this motion. The following is undisputed unless otherwise noted.

Plaintiff began working for the Heritage Club Tech Center ("Heritage") in 2005. Heritage provides certain geriatric care services. In 2006, Defendant acquired Heritage. Shortly thereafter, in July 2006, Plaintiff became Defendant's marketing director for Heritage.

Seven months later, on February 26, 2007, Plaintiff received, reviewed, and signed Defendant's "Employment Binding Arbitration Agreement" (the "Arbitration Agreement"). That document prescribed Defendant's "Binding Arbitration Procedure" for employment disputes:

> Under the [Binding Arbitration] Procedure, certain disputes that may arise from your employment with us, or the termination of your employment with us, must (after appropriate attempts to resolve your dispute internally through management channels) be submitted for resolution by mandatory binding arbitration. In agreeing to submit certain employment disputes for resolution by binding arbitration, you acknowledge that this Agreement is given in exchange for rights to which you are not otherwise entitled–namely, your employment as our association and the more expeditious resolution of employment disputes. In exchange for your agreement to submit these disputes to binding arbitration, we likewise agree to the use of arbitration as the exclusive forum for resolving employment disputes covered by this Agreement.

Def.'s Motion to Substitute Exhibit to Motion to Compel Arbitration Ex. 1 (hereinafter, the "Arbitration Agreement"). The Arbitration Agreement explicitly provided that it covered any claim for violations of the FMLA and claims for age discrimination. *Id*. at § 1.a.ii. The agreement

> set[] forth [the parties'] complete agreement on the subject of meditation and arbitration of the covered claims defined above, and supersedes any prior or contemporaneous oral or written understanding on these subjects. Neither [Plaintiff nor Defendant] are relying on any representations, oral or written, on the subject or the effect, enforceability or meaning of this Agreement, except as specifically set forth in the Procedure.

*Id.* at § 2.

Fast-forward 3.5 years. On September 27, 2010, Stephan requested intermittent FMLA leave to care for her father. Defendant granted her request.  Plaintiff alleges that during her leave, on November 15, 2010, Defendant criticized her performance and placed her on a performance improvement plan. Then, on March 12, 2011, while Plaintiff was still on that leave, Defendant terminated her.  Plaintiff further alleges that while working for Defendant, its supervisory personnel expressed a preference for "young and energetic" marketing employees and directors and that

Defendant actively made its marketing team younger group by terminating her and other employees over the age of 40.

Feeling aggrieved, Plaintiff commenced the instant action, bringing her Claims. Her first and second claims assert that Defendant violated the FMLA by placing her on the performance improvement plan and by firing her while she was on leave. Her third and fourth claims assert Defendant discriminated against her because of her age in violation of the ADEA and Colorado Anti-Discrimination Act.

Defendant now moves pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, asking that I compel arbitration of Plaintiff's Claims, stay the instant case, and award it costs and reasonable attorneys' fees.

## II. Law

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *accord Perry v. Thomas*, 482 U.S. 483, 489 (1987). The Supreme Court has also made it clear that the FAA applies to written arbitration agreements in the employment context. *See Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772 (2010); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 129 (2001).

"[T]he FAA's purpose [is] 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Indeed, "i[n] enacting § 2 of the [FAA], Congress declared a

national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *accord Gergel v. High View Homes, LLC*, 996 P.2d 233, 235 (Colo. App. 1999) ("Arbitration is a favored means of dispute resolution."). It is "clear" that Congress's intent with the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Memorial Hops. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Consequently, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 24. This preference is so strong "that even claims arising under a statute designed to further important social policies may be arbitrated." *Green Tree*, 531 U.S. at 90.

"A court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Gergel*, 996 P.2d at 235. "[A]ny doubts about the scope of an arbitration clause should be resolved in favor of arbitration." *Id.*; *see also United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The presumption favoring arbitration "disappears," however, when the parties dispute the existence of a valid arbitration agreement. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *accord Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

### III. Discussion

### A

Defendant's keystone contention is that Plaintiff's Claims must be arbitrated per the Arbitration Agreement. It argues that the Arbitration Agreement covers the Claims and that the agreement is valid and enforceable.  In opposition, Plaintiff argues that the Arbitration Agreement is invalid and unenforceable and that no enforceable arbitration agreement between the parties exists.

Plaintiff's arguments are not based upon the Arbitration Agreement. Stated differently, Plaintiff does not argue that the Arbitration Agreement, by its own terms, is unenforceable or does not cover her Claims.  Instead, her arguments hang exclusively on Defendant's 2007 and 2009 employee handbooks (the "2007 Handbook" and "2009 Handbook," respectively, and, collectively, the "Handbooks"). In pertinent part, the 2007 Handbook's introduction stated the following:

> This [Handbook] contains information about Brookdale Senior Living Inc. (collectively including our subsidiaries and referenced through this guide as "Brookdale"). This Handbook is meant to be your guide to our Human Resource program. However, it is only intended to be a source of information and a general statement of Brookdale policies and procedures. It is not a contract of employment, expressed or implied, or a promise of employment upon specific terms. For those of you who have received other handbooks or other policy statements, oral or written, in the past, this Handbook revokes and supersedes them.
>
> The Company expressly reserves all of its traditional management rights, including, without limitation, he right to unilaterally revise, interpret or discontinue any of the policies, procedures, rules or benefits set forth in this Handbook, and all other policies, procedures, benefits, and programs of Brookdale, with or without notice.

Pl.'s Resp. Ex. 2. at 4.  After the introduction, among other things, the 2007 Handbook apprised the recipient-employee of Defendant's "Binding Arbitration Procedure."  *See id.* at 6-8. It first introduced that procedure and then set forth the procedure's specific provisions, mirroring the

5

Arbitration Agreement in many respects. *See id.* at 6-8. For example, the Handbook stated that "[t]his Procedure sets forth the complete agreement of the parties on the subject of mediation and arbitration of the covered claims, and supersedes any prior or contemporaneous oral or written understanding on these subjects." *See id.* at 8. The last paragraph of the Handbook's section on the arbitration procedure stated that "you will be asked to sign a separate agreement acknowledging your agreement to be bound by the provisions set forth herein. If you refuse to sign, your continued work with Brookdale shall be deemed to be bound by the terms of the separate binding arbitration agreement." *Id.* at 8.

On February 26, 2007–the same date Plaintiff signed the Arbitration Agreement–Plaintiff signed Defendant's "Associate Handbook Receipt and Acknowledgment." *See* Pl.'s Resp. Ex. 2 at 1. It provided that "[b]y signing in the space below, I am indicating that I have received a copy of this [] Handbook and agree to abide by the policies in the Handbook." *Id.* at ¶ 1. It further provided that

> I specifically acknowledge the following: . . I understand that this Handbook does not create a contract of employment, express or implied, between [Defendant] and me and I should not view it as such, or as a guarantee of employment for any duration. . . . I understand that [Defendant] has an Employment Binding Arbitration policy in place should any disputes arise between [Defendant] and me, and that I agree to arbitrate the dispute by final binding arbitration.

at ¶¶ 1, 3, 8. Defendant would later issue its 2009 Handbook, which contained the same introductory language and discussion of its arbitration procedure as the 2007 version. *See* Pl.'s Resp. Ex. 3. at 2-10. Plaintiff signed a document acknowledging receipt and understanding of the 2009 Handbook. *See* Pl.'s Resp. Ex. 3 at 1.

Based on the Handbooks, Plaintiff asserts four arguments. First, latching on to the second introductory paragraph quoted above and citing *Dumais*, *supra*, the Arbitration Agreement is

6

illusory and unenforceable because Defendant "explicitly retain[ed] the right to unilaterally revise, interpret, or discontinue any of the policies, procedures, . . . set forth in [its] Handbook, and all other policies, procedures, . . of [Defendant], with our without notice," and the arbitration procedure is such a policy. Pl.'s Resp. at 6-7 (internal quotations omitted); *see also Dumais*, 299 F.3d at 1219 ("[A]n arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."). Second, the Arbitration Agreement is also illusory and unenforceable because the Handbooks, by their terms, superseded and revoked other policy statements. Third, because the 2009 Handbook superseded and revoked both the 2007 Handbook and the Arbitration Agreement, and contains Defendant's reservation of right to revise, interpret, or discontinue Defendant's policies, it too is unenforceable. Fourth, the 2009 Handbook's fee provision is unenforceable, rendering the entire thing invalid. Therefore no valid arbitration agreement exists.

I state at the outset that I need not decide whether arbitration must be compelled on the basis of the Handbooks alone (as if the Arbitration Agreement did not exist) because that question is not before me. Rather, I must decide whether arbitration must be compelled under the Arbitration Agreement in light of the Handbooks. I conclude that it must.

I begin with the Arbitration Agreement. It is a stand-alone document that sets forth the arbitration procedure; it does not incorporate, depend upon, or otherwise reference the Handbooks or any other document. It was by signing the Arbitration Agreement that the parties bound themselves to the arbitration procedure. *See* Arbitration Agreement at 1 ("After we sign *this Agreement*, will both be precluded from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures set forth in this Agreement.")

(emphasis added); *id.* at § 2 ("By providing your signature below, you indicate your agreement to the terms set forth above."). Indeed, the Handbooks themselves make clear that Plaintiff would receive a "separate agreement"–the Arbitration Agreement–concerning the arbitration policy and that she would agree to the policy by signing that "separate agreement." It bears repeating that Plaintiff does not dispute that the Arbitration Agreement, in a vacuum, is a binding contract. Nor does she dispute that the agreement covers her claims. I therefore decline to address those issues. At this point, then, the Arbitration Agreement is exactly that: an enforceable contract binding the parties to arbitrate Plaintiff's Claims pursuant to the terms therein.

Compare this to the Handbooks. Their very first paragraphs unambiguously explain that they are not contracts; rather they mere "guide[s]" to Defendant's programs and "general statement[s] of Defendant's policies and procedures," including its arbitration procedure. *See* Pl.'s Resp. Ex. 2. at 4. The acknowledgments of receipt that Plaintiff signed reinforce this. *See, e.g.*, *id.* at 1. So while the Handbooks recite much of the arbitration policy's provisions, they nevertheless operated as an apprisal and overview of Defendant's employees of the arbitration policy and procedure for Defendant's employees and did not act as a contract as to that policy. Plaintiff's supposition that the Handbooks were a binding contract and her conclusion that, as a result, they controlled over the Arbitration Agreement are thus flawed: The Handbooks were explicitly *not* contracts, and the Arbitration Agreement is a contract separate and apart from the Handbooks which Plaintiff does not dispute covers her Claims and is inherently enforceable. And Plaintiff fails to demonstrate how two "general statements" of Defendant's policies and procedures control over and effectively nullify that contract. Her use of the Handbooks may obfuscate this deficiency but does not cure it.

Furthermore, Defendant's retained power in the Handbooks to modify, interpret, and delete extends only to "policies, procedures, rules, benefits, and programs"–not to binding agreements or contracts into which Defendant has entered with an employee. *See* Pl.'s Resp. Ex. 2, 3. A policy or procedure is not a contract. *See, e.g.*, *See Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. App. 1998) (A statement by an employer that is "merely a description of the employer's present policies, [] is neither a promise nor a statement that can reasonably be relied upon."). As stated, Plaintiff does not contend that the Arbitration Agreement by its own terms is unenforceable. Nor does she demonstrate how the Arbitration Agreement transmuted from a *contract* into *policy or procedure* simply because it sets forth a policy or procedure. Any power that the Handbooks assert Defendant has to modify, interpret, or delete thus does even not reach the Arbitration Agreement. Moreover, the Arbitration Agreement does not grant Defendant such a right. *See* Arbitration Agreement. Plaintiff thus fails to establish that Defendant has the right to unilaterally modify, interpret, or delete that agreement. *Dumais* is thus inapposite. 299 F.3d at 1217 ("The Handbook also states, "This [Handbook] is my personal agreement of employment with [American Golf].") Plaintiff's argument on this ground therefore fails.

The above also shows that Plaintiff's arguments that the Handbooks superseded and revoked the Arbitration Agreement are specious. Beginning with the introductory language, the Handbooks state that they revoke and supersede "other handbooks or other policy statements." As explained, the Arbitration Agreement is not a policy or procedure; it is a contract, separate and apart from the Handbooks. Hence, this provision in the Handbooks' introductions does not apply to it. Similarly, the supersession language in the Handbooks' sections outlining the arbitration procedure had no effect on the Arbitration Agreement because the Handbook was not a contract and because, as the

9

Handbooks state, it was the Arbitration Agreement that would bind Plaintiff to that procedure. It also follows from the above that 2009 Handbook's fee provision likewise had no bearing on the Arbitration Agreement, meaning the latter's provision governs. I therefore need not address Plaintiff's fourth argument because it challenges the fee provision in the 2009 Handbook–not the Arbitration Agreement's fee provision. *See* Pl.'s Resp. at 9 ("[T]he Procedure contained *in the 2009 Handbook* cannot otherwise be enforced by this Court because it contains a fee provision requiring that the parties share equally the AAA administrative fees and the arbitrator's fees and expenses.") (emphasis added).

Accordingly, I conclude that there is a valid, enforceable arbitration agreement covering Plaintiff's Claims. The Handbooks do not change that. Consequently, Plaintiff's claims must be arbitrated pursuant to the FAA and the Arbitration Agreement.

**B**

Defendant next argues that if I conclude that Plaintiff's Claims must be arbitrated, this action should be stayed pending the resolution of the arbitration under § 3 of the FAA. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."); *see also Moses*, 460 U.S. at 26 ("[S]tate courts, as much as federal courts, are obliged to grant stays of litigation under § 3 of the Arbitration Act."). Plaintiff does not argue otherwise. Accordingly, I grant Defendant's

request to stay the instant action pending resolution of the arbitration.

### C

Defendant lastly argues that it is entitled to costs and reasonable attorneys' fees. With respect to costs, under Fed. R. Civ. P. 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." A party is entitled to reasonable attorneys' fees when an opposing attorney "multiplies the proceedings in any case unreasonably and vexatiously." *See* 28 U.S.C. § 1927; *see also Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) ("We have repeatedly expressed our concern with the unnecessary burdens, both on the courts and on those who petition them for justice, that result from unreasonable, irresponsible and vexatious conduct of attorneys as well as parties. . . . The assessment of excess costs, expenses, or attorney's fees is a relatively mild sanction, . . ."). Plaintiff again does not argue otherwise. Accordingly, I grant this portion of Defendant's motion.

### IV. Conclusion

For the foregoing reasons, it is ordered that Defendant's Motion to Compel Arbitration **[Doc #8]** is GRANTED. Defendant shall submit its fee and costs claim on or before October 12, 2012. The parties shall submit joint status reports to the Court every 90 days.

Date: September   17  , 2012 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE